State of N.Y. ex rel. Hose v Molina (2024 NY Slip Op 24104)

[*1]

State of N.Y. ex rel. Hose v Molina

2024 NY Slip Op 24104

Decided on April 4, 2024

Supreme Court, New York County

Biben, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 4, 2024
Supreme Court, New York County

The State of New York ex rel. Jennifer Hose, ESQ., on behalf of DANIEL RUIZ, Petitioner,

against
Louis Molina, Commissioner, New York City Department of Correction, Respondent.

Index No. 72871/2022

ADA Sarah Marquez, New York County District Attorney's Office
Jennifer Hose, The Legal Aid Society

Ellen Biben, J.

Petitioner, through counsel, Jennifer Hose, Esq., Legal Aid Society, filed a petition for a writ of habeas corpus pursuant to Civil Procedure Law and Rules (CPLR) §§ 7002(a) and 7002(b)(5) contending that he is being detained unlawfully as a result of Judge Brendan Lantry's decision to increase bail from $50,000 cash, $50,000 insurance company bond or $100,000 partially secured surety bond to $500,000 cash, $500,000 insurance company bond, and $500,000 partially secured surety bond without a hearing in violation of Criminal Procedure Law (CPL) §§ 510.10, 510.30, and 530.60, as well as petitioner's constitutional rights to equal protection and due process pursuant to United States Constitution Amends. V, VIII, XIV and NY Const. Art. 1, § 5. Petitioner claimed that Judge Lantry's decision was an abuse of discretion.
On October 24, 2023, this court denied the petition orally on the record, finding that Judge Lantry did not abuse his discretion in modifying petitioner's securing order and indicating that a written decision would follow. This decision and order sets forth the reasons underlying the denial of the petition.
Procedural History
On July 10, 2023, the parties appeared before Judge Lantry and the People stated their readiness for trial; new counsel, however, was appearing for the first time and thus the case had to be adjourned (July 10, 2023 minutes, pp. 4, 17). The court noted the existence of a tracking Violation of Probation matter for which Probation was recommending a revocation of probation and resentence to a "suitable term of incarceration" (July 10, 2023 minutes, p. 3). Before the conclusion of the calendar call, the People made a bail application based on alleged conduct by petitioner.
The People set forth a summary of the case history: on July 6, 2022, petitioner had been [*2]arrested for conduct that occurred between July 4th and 6th of 2022 that was violative of an active order or protection. Specifically, it was alleged that petitioner had entered the complaining witness's apartment without consent, assaulted her, took her phone, and prevented her from leaving with the use of violence and threats for more than 24 hours. The complaining witness ultimately fled, and petitioner was arrested inside of her apartment (July 10, 2023 minutes, p. 5). At his Criminal Court arraignment, bail was set at $25,000 cash, $75,000 insurance company bond, and $75,000 partially secured bond. The People reported that immediately after his arrest, petitioner began calling the complaining witness while incarcerated on Riker's Island with the use of another incarcerated individual's pin number in order to evade detection because there was an order of protection in place (July 10, 2023 minutes, p. 5). In those recorded calls, petitioner "made various admissions," "discouraged the complaining witness from cooperating with the People," told the complaining witness that she was the only person who could do something about the fact that he was in jail and that if she had not testified in the grand jury, he would not be in jail (July 10, 2023 minutes, pp. 5-6).
Petitioner was thereafter released after making bail but, after being indicted for second-degree kidnapping, first-degree burglary, and related charges, at his July 25, 2022 Supreme Court arraignment, bail was reset at $50,000 cash, $50,000 insurance company bond, or $100,000 partially secured surety bond following the People's bail application, and he was reincarcerated. Petitioner was again released after making bail.
The People contended that since his release, Petitioner continued to violate the order of protection. He was arrested for an alleged assault against the complaining witness in December 2022 and, although the complaining witness later recanted,[FN1]
phone records showed that she and petitioner had been "in near constant contact" — possibly one thousand communications in just over three months - in violation of the order of protection, including phone calls and text messages during the time that the complaining witness went to the District Attorney's Office to recant her version of the incident (July 10, 2023 minutes, pp. 6-7).[FN2]

As a result, the People asked the court to remand petitioner pursuant to CPL § 510.30(g)[FN3]
given that "[h]e is a predicate felon facing a minimum of 8 years in prison on the top count[,] . . . [t]here is strong corroboration of her testimony, including[] text messages he sent to her immediately after the crime and the admissions he made over calls" (July 10, 2023 minutes, p. 7). The People further noted that while petitioner had appeared on every scheduled court date, "he has done that while simultaneously taking significant actions to tamper with the complaining witness with what seems like unlimited confidence that this case will, ultimately, be dismissed" (July 10, 2023 minutes, p. 7). Indeed, the complaining witness had contacted the assigned assistant that morning to say, for the first time, that she did not wish to proceed with the case and [*3]wanted it dismissed (July 10, 2023 minutes, p. 7). The People stated that they could not know whether the complaining witness made that statement of her own volition or as a result of petitioner's influence, and also that they intended to seek new charges as a result of petitioner's continued violations, though they had not yet done so for fear of delaying the pending case (July 10, 2023 minutes, p. 8). The People further indicated that if their request for modification of the securing order was granted and petitioner re-incarcerated, they would ask for an order restricting his phone privileges so that he could not contact the complaining witness while incarcerated (July 10, 2023 minutes, p. 8).
Defense counsel opposed any increase in bail given that petitioner had never missed a court appearance and that the phone records alone did not establish that petitioner had violated the order of protection. Counsel argued that there was no evidence that petitioner had called or messaged the complainant because the phone number from which the calls and messages originated was not registered to petitioner, but instead to his mother or sister, and the People had not provided the substance of the calls (July 10, 2023 minutes, pp. 9, 14, 15). Counsel also called into question the fact that there were numerous communications from the complaining witness to petitioner, that the District Attorney's Office had not sought additional charges against petitioner, and the complaining witness was not present to testify about the communications (July 10, 2023 minutes, pp. 9-12). Counsel contended that petitioner did not pose a flight risk, whereas he was "gainfully employed," had appeared for every court date, missed only one Probation appointment, and was a caretaker for his 77-year-old mother who suffered from dementia (July 10, 2023 minutes, p. 12).
The People countered that petitioner had discouraged the complaining witness from cooperating with the District Attorney's Office on a recorded line, that the complaining witness was in regular communication with the assigned assistant district attorney, that the complaining witness was cooperative when she testified in the Grand Jury, and that petitioner had "constantly violated the order of protection since the day of his arrest" (July 10, 2023 minutes, p. 13).
After hearing argument, reviewing petitioner's history, criminal record, and predicate status, and considering the allegations made by the People, including petitioner's failure to abide by the court's order of protection by extensively contacting the complaining witness, Judge Lantry reset petitioner's bail to $500,000 cash, "500,000 dollars partially secured insurance bond",[FN4]
 and $500,000 partially secured surety bond with a 72-hour surety review (July 10, 2023 minutes, p. 17).
Proceeding on the Petition
As noted above, petitioner filed a petition for a writ of habeas corpus contending that Judge Lantry's decision to modify bail based on the allegations set forth by the People was an abuse of discretion. He claims that, pursuant to CPL § 530.60(2)(b), Judge Lantry was required to hold a hearing at which the People would have had to establish the allegations at the heart of their bail application by clear and convincing evidence before modifying petitioner's securing order.
On September 15, 2023, this court heard argument on the petition from the parties. Petitioner's counsel contended that CPL § 530.60(1) was not applicable because petitioner had [*4]faithfully attended his court appearances and was thus not a flight risk, and that CPL § 530.60(1) "is an implication for risk of flight . . . not a mechanism in which to enforce an Order of Protection" (September 15, 2023 minutes, pp. 4-5, 14-15). Counsel added that petitioner was not only appearing in court but kept in contact with counsel and had also been reporting to Probation (September 15, 2023 minutes, pp. 15-16). Thus, counsel argued that the CPL § 510.30 factors "weigh in [petitioner's] favor," where he "is not a flight risk given the fact that he does have supportive family, he is coming to court, staying in contact with [c]ounsel and he's doing his best to abide by all the conditions of probation" (September 15, 2023 minutes, p. 16). Counsel also reported that the complaining witness had appeared in court that day and maintained that she did not want to proceed with the case (September 15, 2023 minutes, p. 7).
The People argued that CPL § 530.60(1) was applicable in this case and not CPL § 530.60(2) because CPL § 530.60(2) permits a bail modification for supported allegations of felony contempt under Penal Law § 215.51(b), (c), or (d), not for misdemeanor violations of an order of protection (September 15, 2023 minutes, pp. 7-9). Thus, they argued, if CPL § 530.60(1) was not applicable, the People would have no ability to seek bail modification under CPL § 530.60 for the repeated violation of an order of protection (September 15, 2023 minutes, p. 9). They contended, moreover, that as far as risk of flight, the legislature included any violation by the principal of an order of protection as a factor the court should consider when determining bail conditions (September 15, 2023 minutes, p. 16). Additionally, they believed that petitioner was attending his court appearances because he thought that the case against him would be dismissed given that the complaining witness had become uncooperative, but that now that the People were in a position to move the case forward without her cooperation, petitioner had a greater incentive to flee (September 15, 2023 minutes, pp. 16-17). The People also reported that petitioner is facing a term of incarceration for the prior probation violation (September 15, 2023 minutes, pp. 16-17).
The People further contended that under CPL § 530.12(11), a court is permitted to revoke bail when the court is satisfied by competent proof that a defendant has willfully failed to obey the court's mandate (September 15, 2023 minutes, p. 10). In this case, the People argued, the phone records along with information demonstrating that the phone numbers were associated with the complaining witness and petitioner, were competent proof sufficient to satisfy the standard under CPL § 530.12(11) (September 15, 2023 minutes, p. 10). And the fact that petitioner previously had bail reset based on violations of the order of protection demonstrated the willful nature of his conduct (September 15, 2023 minutes, p. 10).
In response, counsel for petitioner argued that petitioner is entitled to a hearing under both CPL § 530.60(2) and CPL § 530.12(11) (September 15, 2023 minutes, p. 12, 14). And further that hearsay evidence, which the People had provided, was not sufficient to satisfy the competent proof standard; instead of phone records, counsel argued, the People were required to call the complaining witness to establish the violations or a witness from the phone company to authenticate the records (September 15, 2023 minutes, p. 12).
Conclusions of Law
CPL § 530.60
The court is required to issue a securing order for a defendant "whose future court [*5]attendance at a criminal action or proceeding is or may be required" (CPL § 510.10[1]).[FN5]
In so doing, the court must make "an individualized determination as to whether the principal poses a risk of flight to avoid prosecution, consider the kind and degree of control or restriction necessary to reasonably assure the principal's return to court, and select a securing order consistent with its determination under this subdivision" (CPL § 510.10[1]). The court's determination must "consider and take into account available information about the principal" which includes, but is not limited to, the factors set forth in CPL § 510.10(1)(a)-(j) (see People ex rel Rankin v Brann, — NE3d &mdash, 2024 NY Slip Op 00850, *3 [Feb 20, 2024] ["a court may consider circumstances beyond those factors delineated in the statute if relevant to risk of flight"]; see also People v Portoreal, 66 Misc 3d 497 [Bx Co Sup Ct 2019] [factors to be considered not limited to those enumerated in the statute]).
CPL § 530.60, entitled "Certain modifications of a securing order" provides three separate scenarios in which a court can modify a securing order. CPL § 530.60(1) permits a court "for good cause shown, [to] revoke the order of recognizance, release under non-monetary conditions, or bail," and either issue another order if the defendant is entitled to recognizance, release under non-monetary conditions, or bail as a matter of right, or, if not, either issue such an order or commit the defendant to the custody of the sheriff in accordance with the statute. In making a determination under this subdivision, "a court may hold a summary hearing and consider the relevant factors to assess defendant's risk of flight[;]. . .. [t]he record must reflect consideration of the factors expressly listed in the CPL as well as "available information ... relevant to the principal's return to court," and a finding of how the risk factors apply to defendant's case (People ex rel Rankin v Brann, 2024 NY Slip Op 00850 at * 3; see CPL former § 510.30 [1] [a]-[h], now 510.10 [a]-[j]).
CPL § 530.60(2)(a) provides that a court may revoke a securing order where a defendant who is charged with the commission of a felony is at liberty as a result of an order of recognizance, release under non-monetary conditions, or bail issued pursuant to this article, and there is "reasonable cause to believe the defendant committed one or more specified class A or violent felony offenses or intimidated a complaining witness or witness in violation of section 215.15, 215.16 or 215.17 of the penal law while at liberty" (CPL § § 530.60[2][a]; see People ex rel Rankin v Brann, 2024 NY Slip Op 00850 at * 3 [holding that "[i]f a defendant's charged crimes render a case otherwise eligible under either subdivision, no one approach is exclusivenothing in subdivision (2) (a) limits the court's ability to modify a defendant's bail under subdivision (1). The People may make a modification application, or the court on its own [*6]initiative may order such a modification, under either subdivision. Both avenues are available, but the record must support the course charted" [footnote omitted]).
Under CPL § 530.60(2)(b), where a defendant who is charged with the commission of any offense is at liberty as a result of a securing order, the court may revoke that securing order and impose a new one after finding by clear and convincing evidence that the defendant: (i) persistently and willfully failed to appear for noticed court appearances; or (ii) "violated an order of protection in the manner prohibited by subdivision (b), (c) or (d) of section 215.51 of the penal law;" or (iii) "stands charged in such criminal action or proceeding with a misdemeanor or violation and, after being so charged, intimidated a victim or witness in violation of section 215.15, 215.16 or 215.17 of the penal law or tampered with a witness in violation of section 215.11, 215.12 or 215.13 of the penal law;" or (iv) "stands charged in such action or proceeding with a felony and, after being so charged, committed a felony while at liberty."
Where, as here, it had not been alleged that petitioner "committed one or more specified class A or violent felony offenses or intimidated a complaining witness or witness in violation of section 215.15, 215.16 or 215.17 of the penal law while at liberty," Judge Lantry could not have modified the securing order under CPL § 530.60(2)(a). Likewise, since it had not been alleged that petitioner either failed to appear in court, violated Penal Law § 215.51(b), (c) or (d) or Penal Law §§ 215.11 - 215.17, or was charged with a new felony offense having already been charged with a felony offense, Judge Lantry would have also not been permitted to modify petitioner's securing order under CPL § 530.60(2)(b).
Instead, after hearing argument and in consideration of "petitioner's history, criminal record, and predicate status," as well as "the allegations made by the People, including petitioner's failure to abide by the court's order of protection by extensively contacting the complaining witness," Judge Lantry aptly relied on the court's authority under CPL § 530.60(1) to modify petitioner's securing order. The record provided ample basis for Judge Lantry to find that there was good cause to believe that while at liberty on a pending qualifying, violent felony offense, petitioner repeatedly violated the express terms of his release, including the court's mandate that he stay away from/not contact the complaining witness and not be rearrested, which demonstrated petitioner's increased risk of flight.
Indeed, the People alleged that petitioner not only maintained near constant contact with the complaining witness, while he was both in and out of jail, in what amounted to nearly one thousand phone calls and text messages between them in a short time-frame, but in recorded phone calls made from Rikers Island, petitioner "made various admissions," "discouraged the complaining witness from cooperating with the People," told the complaining witness that she was the only person who could do something about the fact that he was in jail and that if she had not testified in the grand jury, he would not be in jail. Moreover, Petitioner had been arrested for another alleged assault against the complaining witness several months after his Supreme Court arraignment in the underlying case; although the complaining witness later recanted her version of that incident and that case was ultimately dismissed, phone records showed that she and petitioner had maintained continuous communication, including during the time she was at the District Attorney's Office to recant. Petitioner had additionally violated the terms of his probation and, as a result, Probation recommended termination and sentence. Thus, the record reflected that petitioner faced incarceration for that violation, as well as up to eight years in prison if convicted of the top count in the pending case.
In People ex rel Rankin v Brann, the Court of Appeals expressly noted that "a court may [*7]consider circumstances beyond those factors delineated in the statute if relevant to risk of flight" (2024 NY Slip Op 00850 at * 3). Thus, it is this court's position, along with many others, that Judge Lantry was not required to address each factor individually nor was he required to specifically say the phrase "risk of flight" in order to modify petitioner's securing order under CPL § 530.60(1) (see People ex rel Griffin v Brann, 72 Misc 3d 237, 249 [Bx Co Sup Ct 2020] ["it should not be necessary for the bail-setting court to 'incant' like a talisman the statutory phrases 'risk of flight' and 'least restrictive condition,' nor to go through a long 'laundry list' of all of the statutory bail criteria in every case"], citing State of NY ex rel Rooney v Brann, 68 Misc 3d 679, 683-684 [Kings Co Sup Ct 2020] [under the new statute, the bail-setting court is not required to engage in a "catechistic recitation" of all of the alternatives before selecting the least restrictive alternative]). Indeed, implicit in Judge Lantry's explanation and determination was his consideration of the record made before him in conjunction with petitioner's history and activities, as well as the facts and procedural history of the case, all of which sufficiently demonstrated petitioner's increased risk of flight and, thus, provided good cause to support a modification of petitioner's securing order under CPL § 530.60(1). As a result, Judge Lantry's decision to increase the amount of bail set in this case was not an abuse of discretion.
CPL § 530.12
The People also contend that Judge Lantry was permitted to modify petitioner's securing order pursuant to CPL § 530.12(11)(a), which provides that "[i]f a defendant is brought before the court for failure to obey any lawful order issued under this section, or an order of protection issued by a court of competent jurisdiction in another state, territorial or tribal jurisdiction, and if, after hearing, the court is satisfied by competent proof that the defendant has willfully failed to obey any such order, the court may: (a) revoke an order of recognizance or release under non-monetary conditions or revoke an order of bail or order forfeiture of such bail and commit the defendant to custody. . .." Although the record does not demonstrate that Judge Lantry considered the applicability of CPL § 530.12, entitled "Protection for victims of family offenses," when he modified petitioner's securing order, the facts that were set forth before him appear to satisfy the requirements of the statute. [FN6]

CPL § 530.11, "Procedures for family offense matters," identifies an enumerated list of offenses for which both the family and criminal courts have concurrent jurisdiction and defines "'members of the same family or household' with respect to a proceeding in the criminal courts" (CPL § 530.11[1][a]-[e]). Here, given that the record indicates that petitioner and the complaining witness had previously been in an intimate relationship (see court file), they would be considered "members of the same family or household" under CPL § 530.11(1)(e) ("persons who . . . have been in an intimate relationship regardless of whether such persons have lived together at any time)," and at least two offenses that petitioner is charged with, criminal [*8]obstruction of breathing or blood circulation and third-degree assault, are considered family offense matters under CPL § 530.11(1).
Moreover, with respect to the question of whether the People demonstrated "by competent proof that the defendant [] willfully failed to obey" the prior, lawful order of protection, People v Simmons, 78 Misc 3d 711 (Bx Co 2023) is instructive. In Simmons, the court addressed a prior, oral determination it had made following an evidentiary hearing that was held pursuant to Crawford v Ally in which the defendant was seeking modification of a full temporary order of protection issued under CPL § 530.12 in a criminal case involving a domestic partnership. The court noted that "New York courts have consistently held that informal evidentiary hearings can achieve due process when a litigant faces the deprivation of a significant liberty or property interest" (Simmons, 78 Misc 3d at 717). And also that "[h]earsay and documentary evidence are admissible in all manner of criminal hearings" (Id at 720). In granting the full temporary order of protection, the court in Simmons received into evidence and considered copies of text message screenshots and cell phone logs from the defendant's phone, an unauthenticated domestic incident report, and evidence of unreported abuse reported to the prosecutor, which it found sufficient to support the issuance of the full temporary order of protection (Id at 719-720).
In light of this court's finding that there was ample basis in the record for Judge Lantry to modify petitioner's securing order under CPL § 530.60(1), as set forth above, it need not determine whether CPL § 530.12 also applies. Nevertheless, in line with Simmons, the phone records provided by the People along with the report of petitioner's CJA interview showing that petitioner identified the phone number that appears in those records as his own coupled with the information that petitioner had previously violated the order of protection in this case, established "competent proof" that petitioner willfully failed to obey the order of the court.
Conclusion
Accordingly, for the reasons set forth above, petitioner's application for a writ of habeas corpus is DENIED.
This opinion constitutes the Decision and Order of this court.
Dated: April 4, 2024
New York, New York
Ellen Biben, JSC

Footnotes

Footnote 1:The July 7, 2023 Violation of Probation Report indicates that this matter was later dismissed (see "VOP Updated Report for 07/10/2023", Specification #2, Court File).
Footnote 2:The People reported that the communications with the complaining witness came from the same phone number that petitioner had provided to CJA at the time of his arrest (July 10, 2023 minutes, p. 7).
Footnote 3:Until June 2, 2023 the enumerated bail factors were listed under CPL § 510.30, and have since been listed under CPL § 510.10(1)](a)-(j).

Footnote 4:Although referenced this way in the record (July 10, 2023 minutes, p. 17), the court paperwork makes clear that the second form of bail set was an insurance company bond (see court file).

Footnote 5:In situations other than as set forth in CPL § 510.10(4), the court must release the principal on his own recognizance pending trial, "unless the court finds on the record or in writing that release on the principal's own recognizance will not reasonably assure the principal's return to court. In such instances, the court shall release the principal under non-monetary conditions as provided for in" CPL § 500.10(3)(a) that will "reasonably assure the principal's return to court" (CPL § 510.10 [3]).

"Where the principal stands charged with a qualifying offense, the court, unless otherwise prohibited by law, may in its discretion release the principal pending trial on the principal's own recognizance or under non-monetary conditions, fix bail, or order non-monetary conditions in conjunction with fixing bail, or, where the defendant is charged with a qualifying offense which is a felony, the court may commit the principal to the custody of the sheriff" (CPL § 510.10[4]). 

Footnote 6:Insofar as CPL § 530.12(11) provides the court with the authority to modify a securing order based on "competent proof" as opposed to the standards set forth in CPL § 530.60, this court understands the discrepancy to reflect the legislature's recognition that family offense matters represent a special category of offenses with especially vulnerable victims who are often in exigent situations.